964 P.2d 642

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Jimmie E. LLOYD, Defendant–Appellant**

**No. 21179.**

Supreme Court of Hawai'i.

Sept. 23, 1998.

Michael G.M. Ostendorp, Honolulu, for defendant-appellant.

Alexa D.M. Fujise, Deputy Prosecuting Attorney, for plaintiff-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

On November 5, 1997, following a bench trial, the family court of the first circuit found defendant-appellant Jimmie E. Lloyd guilty of Criminal Contempt of Court, in violation of Hawai'i Revised Statutes (HRS) 710–1077(1)(g) (1993),[1] for violating a temporary restraining order (TRO). On appeal, Lloyd argues that his conviction should be reversed because the trial court failed to fully set forth in the judgment the particular circumstances of his offense. Although conceding error, the prosecution contends that Lloyd's conviction should not be reversed but vacated and remanded for entry of written findings.[2] For reasons discussed *infra,* we agree with the prosecution.

1. HRS § 710–1077(1)(g) provides that "[a] person commits the offense of criminal contempt of court if ... [t]he person knowingly disobeys or resists the process, injunction, or other mandate of a court[.]"

2. Following the submission of Lloyd's opening brief on June 18, 1998, the prosecution, on June 19, 1998, moved this court to vacate the judgment. In its motion, the prosecution acknowledged that the trial court had erred by failing to

## I. BACKGROUND

On June 17, 1997, the family court of the first circuit issued a TRO against Lloyd, enjoining him from contacting Danielle Veilleux, Lloyd's ex-girlfriend. The TRO specifically provided that "[Lloyd] [was] prohibited from any and *all* contact, direct or indirect, including but not limited to oral, written and electronic (pager, telephone, voice mail, recorded message, e-mail) communication...." (Emphasis in original.)

On July 22, 1997, while the TRO was in full effect, Lloyd allegedly contacted Veilleux by telephoning her at her home. Thereafter, Lloyd was arrested and charged with the petty misdemeanor offense of criminal contempt of court. As stated previously, following a jury-waived trial, Lloyd was found guilty of criminal contempt for violating the family court's TRO. With respect to the particular circumstances of Lloyd's conviction, the trial court stated only that:

> THE COURT: ... [B]ased on all of the evidence and the testimony that is credible and the reasonable inferences drawn therefrom, I believe the government has proved that you[, Lloyd,] knew there was a court order not to contact this witness— the complaining witness and that you did while the order was in effect.

Lloyd was sentenced to six months' probation. Although judgment was filed, no written findings were issued by the trial court.

Lloyd timely appealed to this court.

## II. DISCUSSION

■ HRS § 710–1077(5) (1993) provides that "[w]henever any person is convicted of criminal contempt of court or sentenced therefor, the particular circumstances of the offense shall be fully set forth in the judg-

ment and in the order or warrant of commitment." Thus,

> [findings] of fact on which the contempt order is based may not be stated in a general manner; the facts themselves must be stated in such a way that the particular matter for which the [defendant] is held in contempt is not left in doubt, and this requires the specific recital of instances in which contempt occurred.

*Crow v. Crow*, 49 Haw. 258, 265–66, 414 P.2d 82, 87 (1966).

Additionally, in *State v. Hicks*, 71 Haw. 564, 798 P.2d 906 (1990), this court stated:

> The statutory language of HRS § 710–1077(5) is clear. When a person is convicted of criminal contempt of court, the particular circumstances of the offense must be fully set forth in the judgment and order or warrant of commitment. This is required whenever there is a conviction for criminal contempt of court, not only in cases where imprisonment is imposed. *Oral findings are not enough to satisfy the mandate of the statute.*

*Id.* at 567, 798 P.2d at 907 (emphasis added). Because the trial court in *Hicks* failed to set forth written findings of the particular circumstances of the offense in the judgment and in the order or warrant of commitment, we vacated the defendant's conviction and remanded the case for proceedings not inconsistent with our opinion.

■ Based on HRS § 710–1077(5) and *Hicks*, it is undisputed, and we so hold, that the trial court herein erred by failing to include any factual specifications in its November 5, 1997 judgment. The question remains, however, whether the trial court's error warrants that we reverse Lloyd's conviction or vacate it and remand the case for further proceedings.[3]

include the proper factual specifications in its judgment and, accordingly, requested that we vacate the judgment and remand the case for entry of written findings. However, inasmuch as the prosecution and Lloyd disagreed as to the appropriate remedy for the trial court's error, we denied the prosecution's motion on July 9, 1998 (without prejudice to the prosecution's presentation of its arguments in its answering brief) in order to review the issue of remedy subsequent to full briefing.

3. Hawai'i Rules of Appellate Procedure (HRAP) Rule 35(e) (1996) provides:

> **Terminology.** When used in an opinion or dispositional order, the word "reverse" ends litigation on the merits and the phrase "vacate and remand" indicates the litigation continues in the court or agency in accordance with the appellate court's instruction.

As stated previously, in *Hicks*, this court held that the trial court had failed to comply with HRS § 710–1077(5) and, accordingly, ordered that the defendant's conviction of criminal contempt be vacated. Like Lloyd, the defendant in *Hicks* had been found guilty of criminal contempt for allegedly violating a TRO against him.

Despite our decision in *Hicks*, Lloyd contends that his conviction should be reversed based on *State v. Brown*, 70 Haw. 459, 776 P.2d 1182 (1989). In that case, defendant Bernadine L. Brown was convicted of criminal contempt of court, in violation of HRS § 710–1077(1)(g), after failing to appear in court for trial on a charge of promoting a detrimental drug; she was assessed a fine of $100.00. Brown appealed, urging reversal of her conviction on the ground that, among other things, an intent to disobey the court had not been shown.

Notwithstanding that the trial court had specified in the judgment the particular circumstances surrounding Brown's criminal contempt offense, we reversed, but only upon holding that "the facts recounted by the [trial] court were insufficient to enable it to infer the defendant wilfully disobeyed its mandate to appear for trial." *Id.* at 464–65, 776 P.2d at 1186. Here, Lloyd does not argue sufficiency of the evidence; as stated previously, the only question raised on appeal is whether the trial court's failure to comply with the statutory mandate of HRS § 710–1077(5) constitutes reversible error. Moreover, it is

> neither necessary nor profitable to consider at this time whether upon any of the evidence adduced or upon the present record a correct adjudication of guilt could have been made. It will be sufficient to consider the legality of the judgment and the sentence[, if subsequently appealed,] when the lower court shall comply with the requirements of the statute by stating the particular circumstances of the offense as it finds them from the evidence.

*Fernandes v. Fernandes*, 32 Haw. 604, 607 (1933). *Brown* is, therefore, clearly inapposite to the instant case.

Lloyd also relies on *State v. Schutter*, 60 Haw. 221, 588 P.2d 428 (1978), *reh'g denied*, 60 Haw. 677, 588 P.2d 428 (1979). Therein, the defendant was found guilty of criminal contempt of court, in violation of HRS § 710–1077;[4] he was assessed a fine of $100.00. Because the trial court had failed to include in either the judgment or in its special oral findings the factual specifications required by HRS § 710–1077(5), we held simply that "[t]he failure of the trial court to comply with the statute warrants a reversal[.]" *Id.* at 222, 588 P.2d at 429.

Although the *Schutter* court ordered, *ipse dixit* and without discussion, that the defendant's conviction be reversed, *Schutter* does not stand for the proposition urged by Lloyd, to wit, that in every case where a trial court fails to include factual specifications, reversal is required.

As noted previously, HRAP Rule 35(e) currently provides that,

> [w]hen used in an opinion or dispositional order, the word "reverse" ends litigation on the merits and the phrase "vacate and remand" indicates the litigation continues in the court or agency in accordance with the appellate court's instruction.

Prior to the promulgation of HRAP Rule 35(e) in 1996, however, the court used the words "reverse" and "vacate" interchangeably, as synonyms. Thus, notwithstanding the court's use of the word "reverse" in *Schutter*, which was decided in 1978, it is unclear whether the litigation therein continued or ended upon the *Schutter* decision. Regardless, in cases where a trial court has failed to include factual specifications in the judgment and order or warrant of commitment, we have held, as recently as our decision in *Hicks*, that a judgment of conviction of criminal contempt be vacated and not reversed. *See Hicks*, 71 Haw. at 567, 798 P.2d at 907–08; *Crow*, 49 Haw. at 266, 414 P.2d at 87; *Fernandes*, 32 Haw. at 607.

### III. CONCLUSION

Therefore, inasmuch as the error herein was of a technical nature, and as consistent

---

4. *Schutter* does not indicate the specific subsection of HRS § 710–1077 under which Schutter was convicted.

with *Hicks, Crow,* and *Fernandes,* we vacate the November 5, 1997 judgment of the family court of the first circuit and remand this case with specific instructions to the trial court to enter a judgment stating the particular circumstances of the offense committed by Lloyd. Upon entry of those written findings, Lloyd is free to appeal the legality of said judgment and sentence in accordance with the HRAP.